676 A.2d 222

**David L. HART and Ann B. Hart, Appellees,**

**v.**

**Elizabeth O'MALLEY, Appellant,**

**and**

**Charles Aliano, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec 7, 1995.

Decided May 22, 1996.

Frank T. Blasi, Scranton, for O'Malley.

Patrick C. Carey, Scranton, for Aliano.

Charles M. Watkins, Hamburg, for Hart.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## OPINION

ZAPPALA, Justice.

The question in this appeal is whether Appellees David and Ann Hart may maintain an action for wrongful use of civil proceedings, 42 Pa.C.S. § 8351, against the Appellant, Elizabeth O'Malley, even though they were not named as defendants in the underlying action that they allege was wrongfully brought. Under the facts of this case, we hold that the Harts have stated a cause of action, and therefore affirm the order of Superior Court, which reversed the common pleas court order granting O'Malley's preliminary objections in the nature of a demurrer.

David and Ann Hart own a parcel of land in Bridgewater Township, Susquehanna County, on which is located a mobile home park. In August of 1991, they desired to increase the number of units in the park, and submitted a plan to the Susquehanna County Planning Commission for the necessary approval. In October of 1991, the Commission accepted the plan as a preliminary plan contingent on receipt of favorable review of the erosion and sedimentation plan by the Soil Conservation District and approval of the sewer planning module by the Department of Environmental Resources (DER). The Commission's letter advised that, "[w]hen this office receives those items ... another letter will be sent to you allowing you to begin construction/installation of the improvements at that time."

At about the same time as the Commission issued this contingent approval, the Soil Conservation District approved the Harts' erosion and sedimentation plan, leaving DER approval of the sewer plan as the only contingency. The Township Supervisors indicated that they had no objection to the expansion plan by letter dated March 2, 1992.

On March 5, 1992, O'Malley, a resident of Montrose Borough, also in Susquehanna County, filed a complaint naming the Commission as defendant, requesting an injunction "restraining and enjoining the Defendant from granting approval of the Hart subdivision." The complaint asserted that O'Malley's property borders the Harts' property along the Bridgewater–Montrose boundary. It further alleged that the Commission's action was arbitrary and capricious, that the Commission violated the county subdivision and land development ordinance, and that unless the Commission was restrained from granting final approval O'Malley would suffer immediate and irreparable damage. The only specific damage alleged was that, "Commission approval would immediately devalue Plaintiff's property."

■ The complaint for injunction was presented without notice or hearing before President Judge Kenneth W. Seamans, who granted the injunction.[1] Filed with it was an "Affidavit" asserting that "immediate and irreparable loss and damage will result to Plaintiff before this matter can be heard on notice." Also filed was a "Bond" stating that "the Plaintiff

1. A preliminary injunction is an extraordinary remedy and should only be granted where the plaintiff has established a clear right to the relief requested. A preliminary injunction issued without notice and prior to a hearing must be considered an even more extraordinary remedy, which, although provided for in the Rules of Civil Procedure, Pa.R.C.P. 1531(a), should only be granted "when there exists a need for unusual haste so that a clear right may be protected from immediate and irreparable harm." *Soja v. Factoryville Sportsmen's Club*, 361 Pa.Super. 473, 478, n. 1, 522 A.2d 1129, 1131 n. 1 (1987).

As Judge Vanston eventually ruled, O'Malley had no right whatsoever, much less a clear right, to prevent the Commission from approving the Harts' proposal. But for Judge Seamans's uncritical acceptance of the bare assertions of "immediate and irreparable loss and damage" in the Complaint and Affidavit, the injunction could never have been issued.

is held and firmly bound unto the Commonwealth of Pennsylvania in the sum of $10,000.00 to be paid to the Commonwealth," and that whereas the plaintiff had filed a complaint for an injunction, "which said injunction was duly granted by said Court on the entering of the security in the above-mentioned sum.... THE CONDITION OF THIS OBLIGATION IS SUCH, THAT, if the injunction is dissolved because improperly granted, the Plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees...."

■ The following day, a stipulation was filed, which Judge Seamans made an Order of Court, in which the Commission agreed, "to continue the preliminary injunction in effect until a hearing or further order of Court," and O'Malley agreed, "that the time within which the Defendant may answer the Complaint and/or move the Court to join additional Defendants and/or indispensable parties will be extended until notification from Plaintiff's counsel." On March 9, Judge Seamans filed a request that Judge Brendan J. Vanston, President Judge of the Forty–Third Judicial District, Monroe County, be assigned to handle all matters in the case, stating "conflict of interest" as the reason for the request. The request was approved on March 11.[2]

The Harts, acting pro se, filed a petition on March 12, asserting that, "irreparable harm is being caused by the issuance of this Preliminary Injunction," and that, "[u]nless a Hearing is held as soon as possible the entire opportunity for concluding the construction during 1992 will be jeopardized." [3] The Harts then obtained counsel, who filed a petition request-

2. It is not apparent why Judge Seamans acted on the conflict of interest on March 9, after the injunction had been entered and its duration continued indefinitely, rather than on March 5 when the ex parte petition for preliminary injunction was initially presented to him. A judge's duty not to preside over matters in which he has a conflict of interest would seem to be of special weight when all those who might be affected by his actions are not present before him to even raise the issue.

3. DER approval of the sewer planning module was granted on March 18, 1992.

ing that the Harts be permitted to intervene in the litigation and that a hearing be held immediately to determine the merits of the action. The court issued a rule to show cause why the petition should not be granted, returnable on May 11. Following a hearing on that date, the Petition to Intervene was granted. On May 13, the court scheduled a further hearing for July 10, 1992. On May 22, the hearing was rescheduled for July 17, and on June 15, pursuant to a request by the Commission, it was continued until October 16, 1992.[4]

Following argument on October 16, the court sustained the Harts' preliminary objections and vacated the injunction. The court also granted the Commission's motion for summary judgment, holding that the court was "without jurisdiction to prospectively enjoin the acts of a legislative body of government." The Commission approved the Harts' plan on October 20, 1992.

The Harts then filed this action for wrongful use of civil proceedings against O'Malley and her attorney.[5] They alleged that on account of the wrongful obtaining and continuation of the injunction they were prevented from developing their land,

4. On June 25, 1992, the Harts filed a notice of appeal to Commonwealth Court from Judge Seamans's orders of March 5 and 6. In light of the appeal, Judge Vanston entered an order on June 29, continuing the hearing set for October 16 until further order of court pending disposition of the appeal. On June 30, however, Commonwealth Court quashed the appeal as untimely. The Harts sought reconsideration. Judge Vanston entered another order on July 14, noting that the Harts had filed preliminary objections but that he lacked jurisdiction while the application for reconsideration was pending and therefore deferred further proceedings. Reconsideration was denied on July 22, 1992.

Since Judge Vanston had, on June 15, set October 16 as the hearing date, it cannot be concluded that it was the Harts' own action in appealing to Commonwealth Court that prolonged the duration of the injunction by depriving the common pleas court of jurisdiction.

5. The complaint also raised claims for abuse of process and, as to O'Malley, intentional infliction of emotional distress. Superior Court affirmed the dismissal of the abuse of process counts as to both O'Malley and her attorney, and the dismissal of the wrongful use of civil proceedings count against the attorney. The Harts' cross-petition for allowance of appeal from Superior Court's order as to these rulings was dismissed as untimely, therefore the only issue before this Court relates to the wrongful use of civil proceedings claim against O'Malley.

and asserted various items of monetary loss and attorney fees as damages.

Common pleas court observed that the action in which the injunction was obtained was brought by O'Malley against the Commission, not the Harts. Examining the nature of an action for wrongful use of civil proceedings, the court found that it "suggests some type of involuntary participation on the part of the aggrieved party." The court reasoned that because the Harts voluntarily intervened in O'Malley's injunctive action against the Commission, they took the action as they found it, waiving any objection to the process by which the injunction and stipulation continuing it had been obtained before their intervention.

Superior Court, citing *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190 (1993); *Lessard v. Jersey Shore State Bank*, 702 F.Supp. 96 (M.D.Pa.1988); and *Mintz v. Bur*, 6 Pa. D & C 3d 779 (Montgomery County 1977), affirmed per curiam, 257 Pa.Super 641, 390 A.2d 311 (1978), agreed with O'Malley that "an action under 42 Pa.C.S.A. § 8351 for wrongful use of civil proceedings cannot be maintained by one who is not an original party to the underlying action." 436 Pa.Super. at 165, 647 A.2d at 549. "Mere adversity of interest" relative to the initiator of the underlying action, the court indicated, is not sufficient.

The court determined, however, that although the Harts were not named in the original action they were in fact indispensable parties to it since they owned the property affected by the request for injunction. The court held that O'Malley's failure to properly join the Harts as indispensable parties should not bar them from bringing a wrongful use of civil proceedings action against her.

The elements of an action for wrongful use of civil proceedings are as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings *against another* is subject to liability *to the other* for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a) (emphasis added). Sections 8352 through 8354 describe further the meaning of "probable cause," the categories of damages allowable, and the plaintiff's burden of proof.

■ For the most part, the rule stated in *Rosen v. American Bank of Rolla* that one who was not a party to the underlying action cannot sue under this section is adequate. We think it necessary, however, to allow an exception to that rule in recognition of the nature and effect of certain civil proceedings. Particularly in cases where an injunction is sought and obtained, a civil proceeding can operate against a non-party in a direct and particular way as fully as against a party, perhaps more so. See generally Annot., 70 A.L.R.3d 536. Such is true here, where the injunction related not to the Commission's exercise of authority generally but to its actions regarding a specific parcel of property and proposal for its development.[6]

■ Superior Court did not identify its decision as an exception to the general rule, but reached this same result by positing the Harts as indispensable parties even if their status as such was never recognized in the underlying action. Without speculating as to whether a person not named in an action but later determined to have been an indispensable party would, in every situation, have standing to sue under Section 8351, we conclude that in this case O'Malley's action to obtain the injunction affected the Harts so directly and substantially

---

**6.** The effect is even more egregious where the injunction is obtained ex parte. Moreover, in this case, the injunction was continued indefinitely by agreement of the parties before the non-parties directly and substantially affected by it were notified of its existence.

that it should be treated as an action against them for purposes of Section 8351.

The Order of the Superior Court is affirmed.